IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

DIANE CULVER, ALAN MANER,　§
CARTER WHITESIDE, and TYLER　§
SMITH, on their own behalf and on behalf　§
of all others similarly situated,　§
　§
    *Plaintiffs*,　§
　§　　CASE NO. 6:22-cv-00444-JCB-KNM
v.　§
　§
FACTORY MUTUAL INSURANCE　§
COMPANY (FMIC a/k/a "FM GLOBAL"),

    *Defendant.*

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Factory Mutual Insurance Company's ("Defendant" or "FM Global") amended partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 26. Plaintiffs have filed a response (Doc. 27), and Defendant has filed a reply (Doc. 29). This case is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1). Doc. 3. Upon consideration of the parties' arguments, the Court **RECOMMENDS** that Defendant's Motion (Doc. 26) be **GRANTED**.

## PROCEDURAL HISTORY

On November 21, 2022, Plaintiffs Diane Culver, Alan Maner, Carter Whiteside, and Tyler Smith filed the present lawsuit on behalf of themselves and all others similarly situated, alleging that FM Global discriminated against them and others based upon their religion in violation of Title VII of the Civil Rights Act of 1964.[1] Specifically, Plaintiffs bring claims for disparate treatment (Count I), failure to accommodate (Count II), retaliation (Count III), hostile work

---

[1] Doc. 1.

environment (Count IV), and disparate impact (Count V).[2] Plaintiffs have not yet filed a motion for class certification.[3] Plaintiffs "seek to represent a class of all FM Global employees whose requests for accommodations from FM Global's vaccine mandate were denied and who were thus put to the decision of either taking a vaccine to which they objected for religious reasons, or suffering termination."[4]

The Court granted the parties' request to stay the case until all Plaintiffs had received Notice of Right to Sue from the EEOC.[5] Once all Plaintiffs received their Notice of Right to Sue, FM Global filed a partial motion to dismiss.[6] However, shortly after filing the first partial motion to dismiss, FM Global learned that Plaintiff Carter Whiteside had filed an amended charge of discrimination.[7] FM Global moved for leave to file an amended partial motion to dismiss that addressed Mr. Whiteside's amended charge.[8] The Court granted this motion,[9] and FM Global's amended partial motion to dismiss is now ripe for consideration.

## BACKGROUND

The Court draws the following factual background from the Plaintiffs' complaint, and presumes the well-pleaded allegations are true for purposes of this report. *See Manguno v. Prudential Prop. & Case. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

### I.    FM Global's COVID-19 Vaccination Requirement

Each of the Plaintiffs are former employees of Defendant FM Global.[10] On October 21, 2021, FM Global announced that all employees "entering an FM Global office in the U.S." or who

---

[2] Doc. 1.
[3] The parties agreed on a deadline of October 25, 2024, for Plaintiffs' Motion for Class Certification. Doc. 41 at 3.
[4] Doc. 1 at ¶ 160.
[5] Docs. 12, 14, 16.
[6] Doc. 22.
[7] Doc. 24.
[8] Doc. 24.
[9] Doc. 25.
[10] Doc. 1 at ¶ 9–12.

had "in-person contact or interaction with clients, brokers and third parties for company business" must receive the COVID-19 vaccine by November 15, 2021.[11] On November 23, 2021, FM Global sent a company-wide email indicating that everyone who had not begun a course of vaccination by December 13, 2021, would be terminated on January 4, 2022.[12] When FM Global announced the vaccine requirement, it stated that employees could request accommodations for religious or health reasons.[13] Plaintiffs allege that FM Global denied 100% of the religious exemption requests it received.[14] In contrast, according to Plaintiffs, medical accommodations were "routinely" granted.[15]

Each of the Plaintiffs allege that they requested a religious accommodation from the vaccine mandate, that FM Global responded to their exemption request by questioning their sincerely held religious beliefs, and that they were subsequently terminated.

## II. Plaintiff Diane Culver

Ms. Culver was employed by FM Global as a Client Processing Specialist.[16] Plaintiffs' complaint describes Ms. Culver's objection to the vaccine and her response to FM Global's exemption-process questionnaires as follows:

> Ms. Culver first explained her sincere religious belief that the vaccine was tied to end-time events described in the Bible and a precursor to coming hardships that the faithful must endure. Christians commonly refer to this period as the Great Tribulation and it is tied to the rise of the Anti-Christ. Ms. Culver believes that period is beginning now and discerned in her spirit that the COVID-19 vaccines are part of the foundation for these spiritual events. After consultation with a pastor and much prayer, she explained to FM Global that she could not be complicit with this evil and that her belief had been confirmed through a recent Bible study message she heard.[17]

---

[11] Doc. 1 at ¶ 29.
[12] Doc. 1 at ¶ 33.
[13] Doc. 1 at ¶ 39.
[14] Doc. 1 at ¶ 51.
[15] Doc. 1 at ¶ 53.
[16] Doc. 1 at ¶ 9.
[17] Doc. 1 at ¶ 66.

FM Global sought additional information from Ms. Culver regarding her request.[18] FM Global denied her exemption request on November 4, 2021.[19]

On December 15, 2021, a new manager called Ms. Culver to ask if she had changed her mind about getting the vaccine.[20] He replied "yes" when she asked if he was inquiring as to "whether she would change her beliefs to keep her job."[21] FM Global terminated Ms. Culver on January 4, 2022.[22]

### III.    Plaintiff Alan Maner

Plaintiff Alan Maner was a Senior Consultant with FM Global.[23] Plaintiffs' complaint states Mr. Maner's objection is based on two things:

> First, the vaccines—through either their components or their testing processes— are tied to aborted fetal stem cell lines. Because Mr. Maner has a sincerely held religious belief against abortion, the Bible instructs him not to participate in any way with that evil. Second, Mr. Maner believes that God made our bodies as his temple and that it would dishonor God for him to take a corrupted substance such as the COVID vaccines.[24]

FM Global sought additional information from Mr. Maner regarding his request, and his request was ultimately denied on November 4, 2021.[25] FM Global terminated Mr. Maner on January 4, 2022.[26]

### IV.    Plaintiff Carter Whiteside

Plaintiff Carter Whiteside was an Engineering Specialist with FM Global.[27] Mr. Whiteside asserts that "FM Global began creating a culture where the unvaccinated were shunned and

---

[18] Doc. 1 at ¶ 68.
[19] Doc. 1 at ¶ 71.
[20] Doc. 1 at ¶ 73.
[21] Doc. 1 at ¶ 73.
[22] Doc. 1 at ¶ 75.
[23] Doc. 1 at ¶ 10.
[24] Doc. 1 at ¶ 83.
[25] Doc. 1 at ¶ 88.
[26] Doc. 1 at ¶ 90.
[27] Doc. 1 at ¶ 11.

ridiculed, no matter their personal reason for being unvaccinated, even though the company knew that there were those such as Mr. Whiteside who would be unable to take the vaccine due to their religious beliefs."[28] Mr. Whiteside was asked "numerous times" by both co-workers and management whether he was vaccinated.[29] Multiple managers attempted to get him to take the vaccine, with one telling him it was "the biggest mistake of his career to not get the shot."[30] In November, Mr. Whiteside was told he would have to conduct a client meeting virtually because he was unvaccinated.[31]

> Plaintiffs' complaint states that Mr. Whiteside's objection was based on the following:
>
> (1) the fact that the COVID-19 vaccines were each either developed or tested on fetal stem cell lines derived from an abortion; (2) that his body is the temple of the Holy Spirit and God did not want him to pollute it with the COVID-19 vaccine; and (3) a leading from God, through prayer, not to take the vaccine.[32]

FM Global denied his religious accommodation request on December 9, 2021.[33] Mr. Whiteside's manager, the HR Manager, and the Dallas Operations Manager "bombarded" Mr. Whiteside with phone calls asking why he would not get vaccinated and trying to coerce him into getting the vaccine.[34] Mr. Whiteside alleges that someone at FM Global deactivated Mr. Whiteside's company credit card because that person thought he was attempting to steal from FM Global.[35] FM Global conducted no formal review process of the expense in question.[36] A few days later, an HR Manager called Mr. Whiteside and began shouting obscenities, demanding to know why he thought he should not get vaccinated.[37] Mr. Whiteside alleges that she began shouting

---

[28] Doc. 1 at ¶ 106.
[29] Doc. 1 at ¶ 106.
[30] Doc. 1 at ¶ 107.
[31] Doc. 1 at ¶ 114.
[32] Doc. 1 at ¶ 116.
[33] Doc. 1 at ¶ 117.
[34] Doc. 1 at ¶ 122.
[35] Doc. 1 at ¶ 123.
[36] Doc. 1 at ¶ 123.
[37] Doc. 1 at ¶ 124.

"once she learned that Mr. Whiteside was unvaccinated (because of his religious beliefs)." Additionally, a manager called Mr. Whiteside in December saying that if he did not complete a company report, he would not be paid his annual bonus.[38] Mr. Whiteside was terminated on January 4, 2022.[39]

### V.    Plaintiff Tyler Smith

Plaintiff Tyler Smith was an Account Manager with FM Global.[40] The complaint states the following about the contents of Mr. Smith's exemption request:

> Mr. Smith went into great detail about how taking the COVID-19 vaccine would be in conflict with all four of the core virtues of his religion: Stoicism. In order to live in harmony with the Divine Reason, the followers of Stoicism—an ancient tradition dating back to the Greeks—cannot violate the core teachings of the religion.[41]

FM Global asked follow-up questions and then denied his request.[42]

Mr. Smith states that "[o]ver the next few weeks, [he] was asked to participate in dinners, lunches, and phone calls where management continually attempted to persuade him to abandon his religious beliefs and comply with FM Global's mandate."[43] He describes the process as "invasive, discriminatory, and harassing."[44] Mr. Smith was terminated on January 4, 2022.[45]

### LEGAL STANDARD

### I.    Rule 12(b)(6)

The Court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-

---

[38] Doc. 1 at ¶ 125.
[39] Doc. 1 at ¶ 128.
[40] Doc. 1 at ¶ 12.
[41] Doc. 1 at ¶ 137.
[42] Doc. 1 at ¶ 147.
[43] Doc. 1 at ¶ 149.
[44] Doc. 1 at ¶ 149.
[45] Doc. 1 at ¶ 152.

pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the Court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," fail to state a claim for which relief can be granted. *Iqbal*, 556 U.S. at 663.

## ANALYSIS

FM Global argues that all four Plaintiffs' hostile work environment claims should be dismissed because each Plaintiff failed to exhaust those claims before the EEOC and failed to plead sufficient facts to state them.[46] FM Global also argues that Plaintiff Tyler Smith's claims for retaliation, failure to accommodate, disparate treatment, and disparate impact should be dismissed because Mr. Smith has failed to allege how compliance with FM Global's vaccination policy conflicted with his religious beliefs.[47]

### I.    Failure to exhaust administrative remedies

FM Global argues that Plaintiffs' hostile work environment claims must be dismissed because each Plaintiff failed to exhaust his or her administrative remedies.

Plaintiffs seeking relief pursuant to Title VII must first exhaust their administrative remedies—meaning that they must file a timely charge with the EEOC and receive a statutory notice of right to sue. *Taylor v. Books-a-Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). A

---

[46] Doc. 26 at 7.
[47] Doc. 26 at 7.

plaintiff asserting a discrimination claim must file a charge of discrimination within 300 days in Texas, a "deferral" state. *See Carter v Target Corp*, 541 F Appx 413, 419 (5th Cir 2013).

A plaintiff "may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).

Courts should construe the scope of an EEOC complaint liberally because most complaints are initiated pro se. *Pacheco*, 448 F.3d at 788. The Fifth Circuit "do[es] not require that a Title VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies." *Id.* at 792 (citation omitted and internal footnote omitted). But at the same time, "condon[ing] lawsuits that exceed the scope of EEOC exhaustion . . . would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

Title VII's charge-filing requirement is not a question of jurisdiction. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850 (2019). The Court considers the question of whether Plaintiffs have exhausted their administrative remedies with respect to Title VII under the lens of Federal Rule of Civil Procedure 12(b)(6). *See Ganheart v. Brown*, No. 17-30813, 2018 WL 3213748, at *2 (5th Cir. June 29, 2018).

The Court will analyze the separate charges filed by each Plaintiff to decide whether the hostile work environment allegations "could reasonably be expected to grow out of the initial charges of discrimination and put [FM Global] on notice that [he or she] would be pursing the claim." *Trevino v. SAIA Motor Freight Line, LLC*, No. 4:20-CV-00825-P-BP, 2021 WL 1009317, at *3 (N.D. Tex. Jan. 26, 2021), *report and recommendation adopted*, No. 4:20-CV-00825-P, 2021 WL 977096 (N.D. Tex. Mar. 16, 2021). "For a claim of hostile work environment to reasonably

be expected to grow out of an employee's charge of discrimination, the employee must allege more than just discrete actions of discrimination." *Id.* at *4 (citing *Gates v. Lyondell Petrochemical Co.*, 227 F.App'x 409, 409 (5th Cir. 2007)).

Plaintiffs state that their administrative charges should be read broadly because they were not represented by counsel when they drafted the charges.[48] As noted above, it is correct that the scope of the charge should be construed liberally. However, "a plaintiff's charge should not be so liberally construed that a plaintiff does not need to state the basic facts that make up his discrimination claim because a plaintiff does not need legal assistance to merely articulate the facts underlying his claims." *Stanley v. Univ. of Tex. Med. Branch, Galveston, TX*, 425 F. Supp. 2d 816, 822 (S.D. Tex. 2003).

### A.  Ms. Culver and Mr. Maner

FM Global argues that Ms. Culver and Mr. Maner's hostile work environment claims should be dismissed due to failure to exhaust their administrative remedies.[49] The Court agrees.

Ms. Culver filed her original charge with the EEOC on April 26, 2022.[50] She filed an amended charge on May 3, 2022.[51] The Court cannot find, and the parties have not pointed to, any difference between the contents of her original charge and her amended charge. Both of Ms. Culver's charges state that: (1) she requested a religious accommodation; (2) she received a questionnaire from FM Global regarding the basis for the accommodation she was seeking; (3)

---

[48] Doc. 27 at 20.
[49] Doc. 26 at 17.
[50] Doc. 26-3. The charges that all four plaintiffs filed with the EEOC are central to the resolution of FM Global's motion to dismiss. The Plaintiffs did not file copies of the EEOC charges with their complaint, but FM Global attached copies to its motion. The Court may consider the charges because it is proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record. *See Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*, 16 F.Supp.3d 783, 797 n.45 (S.D. Tex. 2014) ("Even though the EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion." (quotation omitted)).
[51] Doc. 26-4.

FM Global denied her accommodation; (4) FM Global subsequently terminated her employment; and (5) she believes she was discriminated against because of her religion.[52]

Mr. Maner filed a charge with the EEOC on April 11, 2022.[53] The charge states the following:

> "I was discriminated and retaliated against based on my Religion (Christian) in that I was denied a religious exemption accommodation request for the COVID19 vaccination on November 4, 2021. I was ultimately terminated on January 4, 2022, for not complying with the vaccine mandate. The company failed to engage in good faith negotiations regarding my religious accommodation."[54]

A hostile work environment claim cannot reasonably be expected to grow out of either Ms. Culver or Mr. Maner's charges. A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). Even if Ms. Culver and Mr. Maner's charges are read broadly, they do not contain any mention of a workplace "permeated with discriminatory intimidation, ridicule, and insult." Instead, they allege only discrete actions of discrimination. This is not sufficient to exhaust hostile workplace environment claims. *See Gates*, 227 F. App'x at 409 ("[plaintiff's] hostile environment and unequal pay claims could not be expected to grow out of her EEOC discrimination charge when she charged only her employer's discrete acts in terminating and failing to promote her, and made no mention of a hostile work environment or unequal pay.").

Ms. Culver and Mr. Maner's hostile work environment claims should be dismissed for failure to exhaust administrative remedies.

---

[52] Doc. 26-3; Doc. 26-4.
[53] Doc. 26-6.
[54] Doc. 26-6 at 2.

### B.  Mr. Smith

FM Global argues that Mr. Smith cannot bring a hostile work environment due to his failure to exhaust administrative remedies.[55] The Court agrees. Mr. Smith filed his original charge with the EEOC on April 14, 2022.[56] Mr. Smith amended his charge on November 2, 2022.[57]

Mr. Smith's original charge states: (1) he requested a religious accommodation; (2) he received a letter denying his request; (3) he disputed the denial letter and asked for reconsideration; (4) he received a termination letter based on non-compliance with the vaccine policy; and (5) that he believes he was discriminated against because of his religion.[58] However, "[f]or a claim of hostile work environment to reasonably be expected to grow out of an employee's charge of discrimination, the employee must allege more than just discrete acts of discrimination." *Trevino v. SAIA Motor Freight Line, LLC*, No. 4:20-CV-00825-P-BP, 2021 WL 1009317, at *4 (N.D. Tex. Jan. 26, 2021) (citing *Gates v. Lyondell Petrochemical Co.*, 227 F. App'x 409, 409 (5th Cir. 2007)), *report and recommendation adopted*, 2021 WL 977096 (Mar. 16, 2021).

Mr. Smith's amended charge is different than his original charge. It checks the box for discrimination based on hostile work environment and specifically states that "[t]hese are amended charges of discrimination, to include a claim of hostile work environment."[59]

Although Mr. Smith's *amended* charge checked the box for discrimination based on a hostile work environment and stated that it "include[ed] a claim of hostile work environment," the amended charge is time-barred. A discrimination charge is filed for the purposes of Title VII on the date that the EEOC receives the charge. *Deleon v. Gen. Insulation, Inc.*, 575 F. App'x 292, 293 (5th Cir. 2014). Mr. Smith does not dispute that the EEOC received the charge on November 2,

---

[55] Doc. 26 at 17.
[56] Doc. 26-8.
[57] Doc. 26-9.
[58] Doc. 26-8.
[59] Doc. 26-9.

2022.[60] Mr. Smith's last day of employment was January 4, 2022, and his termination is the last alleged discriminatory action taken by FM Global.[61] November 2, 2022, is more than 300 days after January 4, 2022. Although his original charge was timely, his amended charge was not.

The question of whether Mr. Smith's claims are time-barred hinges on whether his amended charge "relates back" to the date of filing of his original charge. EEOC regulations allow a claimant to amend a charge of discrimination to "cure technical defects or omissions" or to "clarify and amplify" the initial allegations. 29 C.F.R. § 1601.12(b). "Generally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003). An exception to this general rule exists when "the facts supporting both the amendment and the original charge are essentially the same." *Id.* at 879. "[T]he question is whether the employee *already included* sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination." *Id.*

FM Global argues that Mr. Smith's amended charge cannot relate back to his original charge because the original charge made no reference to claims for hostile work environment and is premised on a different set of facts.[62] In response, Plaintiffs assert that because FM Global was on notice of Mr. Smith's religious discrimination claim, the exhaustion requirement was met for his hostile work environment claim as well.[63] Plaintiffs argue that both of the unlawful employment practices (the failure to accommodate and the hostile work environment) are a "direct

---

[60] Doc. 27 at 18.
[61] Doc. 1 at ¶ 128.
[62] Doc. 26 at 14.
[63] Doc. 27 at 20.

result" of the denial of the religious accommodation.[64] According to Plaintiffs, the amended charge

therefore relates back to the original charge.[65]

The Court disagrees. As explained by the Fifth Circuit, Mr. Smith's amended charge would

only relate back if the facts supporting both the amendment and the original charge are "essentially

the same." *Manning* 332 F.3d at 879. "A discriminatory act alleged in a lawsuit but not included

in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply

because both are based on the same type of discrimination." *Turner v. St. Luke's Episcopal Health

Sys.*, No. CIV.A. H-06-1668, 2008 WL 706709, at *8 (S.D. Tex. Mar. 14, 2008) (citing *Cheek v.

W. and S. Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir.1994)).

The facts included in Mr. Smith's original charge (termination due to non-compliance with

a vaccine policy) do not place FM Global on notice that Mr. Smith might have additional hostile

work environment allegations. The amended charge therefore cannot relate back to the original

charge, and Mr. Smith's hostile work environment claim is untimely. *See Henry v. Parkwest

Staffing Servs., Inc.*, No. CIV.A. H-11-2417, 2012 WL 950213, at *5 (S.D. Tex. Mar. 20, 2012)

(finding amended charge adding racially hostile work environment claim untimely where original

charge only alleged racial discrimination); *Weeks v. Nationwide Mut. Ins. Co.*, No. CV H-21-4138,

2023 WL 4074409, at *3 (S.D. Tex. May 18, 2023) (same). Mr. Smith's hostile work environment

claim should be dismissed for failure to exhaust administrative remedies.

---

[64] Doc. 27 at 20.
[65] Doc. 27 at 20. A Court outside the Fifth Circuit has rejected a similar argument. *Baugh v. Austal USA, LLC*, No. CV 22-00329-KD-C, 2023 WL 5125171, at *11 (S.D. Ala. July 21, 2023), *report and recommendation adopted,* No. CV 1:22-00329-KD-C, 2023 WL 5105250 (S.D. Ala. Aug. 9, 2023) (noting that the fact that Plaintiffs' EEOC charges complained of failure to accommodate and mentioned the existence of Defendant's vaccine mandate would not prompt the EEOC to investigate claims for hostile work environment, harassment, or disparate treatment).

## C.  Mr. Whiteside

FM Global argues that Mr. Whiteside cannot bring a hostile work environment claim because of his failure to exhaust administrative remedies.[66] The Court agrees. Mr. Whiteside filed his original Charge with the EEOC on October 27, 2022.[67] He filed his amended charge on November 3, 2022.[68] Mr. Whiteside's original charge states that he requested a religious accommodation, and it was denied.[69] The original charge also states the following:

> Due to my exercising my religious beliefs, as is my right, I was then subject to coercive and discriminatory actions by my employer that other employees were not, such as not being allowed to fully participate in employee events, threats of future remorse, conversations with senior management about my future prospects, etc. I was then ultimately retaliated against by having my employment terminated on January 4, 2022 for not compromising my religious beliefs.[70]

Assuming, arguendo, that a claim for hostile work environment could reasonably be expected to grow out of Mr. Whiteside's original charge, the claim would still be time-barred. To be timely, Mr. Whiteside's charge must have been filed within 300 days of any act that was part of the hostile work environment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002). Therefore, for Mr. Whiteside's original charge to be timely, an incident that was part of the hostile work environment must have happened after December 31, 2021.[71] As FM Global points out in its motion, the only allegation Mr. Whiteside makes against FM Global after 2021 is that he was terminated on January 4, 2022.[72] Termination cannot constitute a separate incident of hostile work environment. *Edwin v. Clean Harbors Env't Servs. Inc.*, No. 22-30263, 2023 WL 4046275, at *3 (5th Cir. June 16, 2023) (citing *Parker v. State of Louisiana Dep't of Educ. Special*

---

[66] Doc. 26 at 17.
[67] Doc. 26-11.
[68] Doc. 26-12.
[69] Doc. 26-11.
[70] Doc. 26-11.
[71] Mr. Whiteside's original charge was filed on October 27, 2022. Doc. 26-11. 300 days before October 27, 2022 is December 31, 2021.
[72] Doc. 26 at 12; Doc. 26-11; Doc. 1 at 29.

*Sch. Dist.*, 323 F. App'x 321, 327 (5th Cir. 2009)). Plaintiffs' Reply does not address this argument or point to an act of harassment timely to his EEOC filing. Mr. Whiteside's hostile work environment claim should be dismissed for failure to exhaust administrative remedies.

## II.    Failure to state a claim for hostile work environment

FM Global also moves to dismiss all four Plaintiffs' hostile work environment claims on the ground that each of them has failed to state a hostile work environment claim.[73]

To establish a prima facie case of a hostile work environment, a plaintiff must show he: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [a protected status]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

The plaintiff must allege that an employer has "created a working environment heavily charged with discrimination." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Supreme Court has held that an employer violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted).

---

[73] Doc. 26 at 20.

The Fifth Circuit has held that a plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss, but he must allege sufficient facts to support his Title VII claim. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citations omitted).

The fact that all four plaintiffs failed to exhaust their administrative remedies is sufficient grounds for dismissal of their hostile work environment claims in and of itself. Nevertheless, the Court will also consider FM Global's argument that all four plaintiffs failed to state a claim.

### A.  Ms. Culver

There is no indication that Ms. Culver experienced mistreatment that was "severe or pervasive." As summarized above, her hostile work environment allegations stem from a single conversation with a manager who called Ms. Culver to ask whether she had changed her mind about getting the vaccine. "Isolated incidents do not support a hostile work environment claim unless the complained-of incident is 'extremely serious' in nature." *Higgins v. Lufkin Indus., Inc.*, 633 Fed. App'x. 229, 235 (5th Cir. 2015).

The conduct alleged by Ms. Culver could not be characterized as creating an abusive working environment. Her hostile work environment claim should be dismissed.

### B.  Mr. Maner

The complaint contains no allegations of conduct to establish Mr. Maner's hostile work environment claim. In fact, Plaintiffs' Reply appears to concede that Mr. Maner did not adequately plead the claim.[74] Mr. Maner's hostile work environment claim should therefore be dismissed.

### C.  Mr. Smith

Mr. Smith alleges that he was asked to participate in "dinners, lunches, and phone calls where management continually attempted to persuade him to abandon his religious beliefs and

---

[74] Doc. 27 at 5 ("[T]he Complaint adequately pleads claims for a hostile work environment that were exhausted with the EEOC, at least as to Plaintiffs Culver, Whiteside, and Smith.").

comply with FM Global's mandate."[75] He makes broad allegations of discriminatory comments, but he does not state any facts to show whether the conduct was physically threatening, humiliating, or offensive. Additionally, he does not plead facts showing the conduct was severe or pervasive. His allegations are not sufficient to state a claim for hostile work environment.

### D.  Mr. Whiteside

Mr. Whiteside alleges that FM Global [created] "a culture where the unvaccinated were shunned and ridiculed, no matter their personal reason for being unvaccinated."[76] However, to state a hostile work environment claim under Title VII Mr. Whiteside must allege that he was "shunned and ridiculed" *because of his religion*.

Mr. Whiteside alleges that he experienced five different types of harassment: (1) being told he had to conduct a client meeting virtually because he was unvaccinated; (2) being "bombarded" with phone calls in which managers asked him why he would not get vaccinated and tried to coerce him into getting the shot; (3) deactivation of his company credit card; (4) a phone call in which an HR manager "began shouting obscenities" at Mr. Whiteside; and (5) a statement by a manager that if Mr. Whiteside did not complete a report by a certain date, he would not be paid his annual bonus.

To successfully plead a claim of hostile work environment, Mr. Whiteside must allege facts that link the alleged harassment to his religion. *See Raj*, 714 F.3d at 331 ("As [plaintiff] has not alleged any connection between his [protected status] and the harassment alleged in the complaint, he has not pled a claim of hostile work environment that raises his right to relief "above the speculative level.").

Even assuming that being "bombarded" with phone calls from managers trying to convince him to get vaccinated was harassing, Mr. Whiteside does not allege that these phone calls were

---

[75] Doc. 1 at ¶ 149.
[76] Doc. 1 at ¶ 106.

linked to his religion. Similarly, Mr. Whiteside does not connect his manager's refusal to let him conduct an in-person meeting to his religious beliefs (as opposed to, for example, a concern for health and safety).

Regarding the deactivation of his company credit card, Mr. Whiteside states that the card was deactivated because "someone at the company evidently thought he was attempting to steal from FM Global."[77] Nevertheless, Mr. Whiteside "understood this to be another retaliatory act against him for his beliefs."[78] This isolated event does not constitute a hostile work environment because "a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Nichols v. Lewis Grocer*, 138 F.3d 563, 570 (5th Cir. 1998) (quoting *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991)). Any inference of religious discrimination appears to be subjective, not supported by comments or actions.

Similarly, the fact that Mr. Whiteside's manager threatened to withhold Mr. Whiteside's annual bonus for failure to complete a report on time does not support a hostile work environment claim. *See Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007) (per curiam) (finding that "careful monitoring of job performance and a decision not to grant a discretionary award, absent any other evidence of prohibited discrimination, does not suffice to support a claim for hostile work environment").

Mr. Whiteside also alleges that an HR Manager called Mr. Whiteside to speak to him about his vaccination status. He states that once she learned he was unvaccinated because of his religious beliefs, "[her] tone changed dramatically and she began shouting obscenities at Mr. Whiteside, demanding to know why he thought he should not get vaccinated."[79] However, "[i]solated incidents do not support a hostile work environment claim unless the complained-of incident is

---

[77] Doc. 1 at ¶ 123.
[78] Doc. 1 at ¶ 123.
[79] Doc. 1 at ¶ 124.

'extremely serious' in nature." *Higgins v. Lufkin Indus., Inc.*, 633 Fed. App'x. 229, 235 (5th Cir. 2015). The Court need not decide whether this incident was "extremely serious in nature" because, even assuming that it was, Mr. Whiteside's hostile work environment claim fails for failure to exhaust administrative remedies.

### III.    Whether Mr. Smith fails to plead a prima facie claim for failure to accommodate, disparate impact, disparate treatment, and retaliation

FM Global argues that the Court should dismiss Mr. Smith's remaining Title VII claims under Rule 12(b)(6) on the ground that Mr. Smith fails to allege how compliance with FM Global's vaccination policy conflicted with his religious beliefs.[80] Mr. Smith's remaining claims are labeled as raising disparate treatment, failure to accommodate, retaliation, and disparate impact theories of religious discrimination. In their briefing both parties address all four theories together, seemingly agreeing that if Mr. Smith has not alleged "how his religious beliefs conflicted with a requirement of his employment," all four claims must be dismissed. The Court will assume this is the case for purposes of this report; Mr. Smith has stated that he can file an amended complaint providing more detail about his religious beliefs, and further briefing as to Mr. Smith's Title VII claims would be appropriate at that time if necessary.[81]

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . religion[.]" 42 U.S.C. § 2000e-2. "[A] plaintiff need not make out a *prima facie* case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim."

---

[80] Doc. 26 at 7.
[81] For example, neither party addresses whether making a religious accommodation request is a protected activity. Several district courts within the Fifth Circuit have held that requesting a religious accommodation is sufficient to constitute a protected activity. *See, e.g., EEOC v. U.S. Steel Tubular Prods., Inc.*, No. 4:14-CV-02747, 2016 WL 11795815, at *16 (S.D. Tex. Aug. 4, 2016); *McNeill v. Tyson Fresh Meats, Inc.*, No. 2:23-CV-041, 2023 WL 8532408, at *5 (N.D. Tex. Dec. 8, 2023). However, one district court within the Fifth Circuit has held that requesting religious accommodation is not a protected activity for the purposes of a Title VII retaliation claim. *Reichert v. Infusion Partners, L.L.C.*, No. CV 22-5450, 2023 WL 4685377, at *6 (E.D. La. July 21, 2023).

*Raj*, 714 F.3d at 331. However, the plaintiff must "plead sufficient facts on all of the ultimate elements" to make their claim plausible. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). In deciding whether the plaintiff has plead sufficient facts to make a plausible claim, it can be helpful to reference the *McDonnell Douglas*[82] framework.[83]

In order to state a prima facie claim of religious discrimination, a plaintiff must allege that "(1) [he] held a bona fide religious belief, (2) [his] belief conflicted with a requirement of [his] employment, (3) [his] employer was informed of [his] belief, and (4) [he] suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014).

FM Global moves to dismiss Mr. Smith's remaining claims because Mr. Smith has failed to adequately plead the second of the above factors: that his religious belief conflicted with the requirement that he take the COVID-19 vaccine.[84] In their Response, Plaintiffs do not dispute that Mr. Smith must allege how his religious belief conflicted with the vaccine requirement to state a claim under his remaining Title VII causes of action. Plaintiffs simply argue that Mr. Smith has already done so.[85]

The relevant portion of Mr. Smith's complaint reads as follows:

[Mr. Smith] submitted his request for an exemption based on his sincerely held religious beliefs on October 21, 2021. In his request, Mr. Smith went into great detail about how taking the COVID-19 vaccine would be in conflict with all four of the core virtues of his religion: Stoicism. In order to live in harmony with the

---

[82] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[83] *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework. In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim." (quoting *Chhim*, 836 F.3d at 470-71)).

[84] Doc. 26 at 26. FM Global does not move for dismissal at this stage on the ground that Smith does not hold a "bona fide religious belief." The Fifth Circuit cautions that "judicial inquiry into the sincerity of a person's religious belief 'must be handled with a light touch, or judicial shyness.'" *Davis*, 765 F.3d at 486 (quoting *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013)). The Court does not inquire into the sincerity of Smith's religious belief at this juncture.

[85] Doc. 26 at 24.

Divine Reason, the followers of Stoicism—an ancient tradition dating back to the Greeks—cannot violate the core teachings of the religion.[86]

FM Global argues that Mr. Smith's allegation that "taking the COVID-19 vaccine would be in conflict with all four of the core virtues of [Stoicism]" is conclusory.[87] FM Global states that Mr. Smith must explain in his complaint *how* taking the vaccine would conflict with his religious beliefs.[88]

In response, Mr. Smith argues that his complaint already explains how taking the vaccine conflicts with his religious beliefs. Mr. Smith states that "it conflicts by forcing him to violate the teachings of his religion because it would conflict with his religion's core values. That is 'how.'"[89] Mr. Smith states that, if given the opportunity, he could provide more information about how taking the vaccine conflicts with his religious beliefs in an amended complaint.[90] The information he would add was already provided to FM Global in his religious exemption request.[91]

The Court agrees with FM Global that Mr. Smith's allegation that "taking the COVID-19 vaccine would be in conflict with all four of the core virtues of [Stoicism]" is conclusory. "To *plead* a religious belief such that the Court can remedy its violation, 'a plaintiff must allege some facts regarding the nature of [his] belief system, as well as facts connecting [his] objection to that belief system.'" *Arzamendi v. Austin*, No. 4:23-CV-0770, 2024 WL 1641962, at *3 (N.D. Tex. Apr. 16, 2024) (quoting *Caspersen v. W. Union, LLC*, 2023 WL 6602123, at *7 (D. Colo. Oct. 10, 2023)).

Mr. Smith has alleged some facts regarding the nature of his belief system—that Stoicism has four "core virtues" that its followers cannot violate. However, Mr. Smith does not allege any

---

[86] Doc. 1 at ¶¶ 136–137.
[87] Doc. 26 at 26.
[88] Doc. 26 at 26–27.
[89] Doc. 27 at 25.
[90] Doc. 27 at 27 n.3.
[91] Doc. 27 at 27 n.3.

facts connecting his objection to the COVID-19 vaccine to that belief system. For example, Mr. Smith has not alleged any facts regarding how taking the COVID-19 vaccine violates any of Stoicism's four core virtues or what the core virtues are. Because Mr. Smith has, at this juncture, failed to connect his objection to the COVID-19 vaccine to his belief system, his religious discrimination claims should be dismissed without prejudice. Mr. Smith should be granted leave to amend because he states that he could provide more detail about his religious beliefs in an amended complaint.[92]

## RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** Defendant FM Global's partial motion to dismiss (Doc. No. 26) be **GRANTED**.

Specifically, the undersigned recommends the following: (1) that FM Global's motion to dismiss all Plaintiffs' hostile work environment claims (Count IV) be **GRANTED** and that these claims be dismissed without prejudice;[93] and (2) that FM Global's motion to dismiss Mr. Smith's disparate treatment (Count I), failure to accommodate (Count II), retaliation (Count III), and disparate impact (Count V) claims be **GRANTED**, that these claims be dismissed without prejudice, and that Mr. Smith be granted leave to amend.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.

---

[92] Doc. 27 at 27 n.3.
[93] *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004) ("When a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies.").

An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 30th day of May, 2024.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE