UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

————

No. 6:22-cv-00444

————

**Diane Culver et al.,**
*Plaintiffs,*

v.

**Factory Mutual Insurance Company,**
*Defendant.*

————

# OPINION AND ORDER

Plaintiffs Diane Culver, Alan Maner, Carter Whiteside, and Tyler Smith filed the present lawsuit on behalf of themselves and all others similarly situated, alleging that Factory Mutual Insurance Company ("FM Global") discriminated against them and others based upon their religion in violation of Title VII of the Civil Rights Act of 1964. Doc. 1. The case was referred to United States Magistrate Judge K. Nicole Mitchell pursuant to 28 U.S.C. § 636(b)(1). Doc. 3.

Defendant moved to dismiss each of plaintiffs' claims of a hostile work environment for failure to exhaust administrative remedies. Doc. 26 at 1. Defendant also moved to dismiss all of plaintiff Tyler Smith's claims for failure to state a claim. *Id.* On May 30, 2024, the magistrate judge issued a report recommending that each of the plaintiffs' claims for hostile work environment be dismissed without prejudice and that plaintiff Tyler Smith's claims for disparate treatment, failure to accommodate, retaliation, and disparate impact be dismissed without prejudice. Doc. 49 at 22. The magistrate judge recommended that Smith be granted leave to file an amended complaint that included further information regarding Smith's religious discrimination claims. *Id.* Plaintiffs submitted objections to the report, as well as a notice of supplemental authority. Docs. 50, 51. Defendant submitted a response to the objections. Doc. 52. The court reviews objected-to portions

of the magistrate judge's report and recommendation de novo. *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1).

## I.   Tyler Smith's religious discrimination claims

Plaintiffs first object to the magistrate judge's recommendation that Smith's religious discrimination claims be dismissed without prejudice. Doc. 50 at 5. Smith states that in his exemption request, he "went into great detail about how taking the COVID-19 vaccine would be in conflict with all four of the core virtues of his religion: Stoicism." Doc. 1 ¶¶ 136–37. He further explains that "[i]n order to live in harmony with the Divine Reason, the followers of Stoicism—an ancient tradition dating back to the Greeks—cannot violate the core teachings of the religion." *Id.* ¶ 137. Smith does not allege facts regarding how taking the COVID-19 vaccine violates Stoicism's four core virtues or what those core virtues are.

In order to state a prima facie claim of religious discrimination, a plaintiff must allege that: "(1) [he] held a bona fide religious belief, (2) [his] belief conflicted with a requirement of [his] employment, (3) [his] employer was informed of [his] belief, and (4) [he] suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014).

Plaintiffs argue that Smith does not need to explain in the complaint *how* his beliefs conflicted with the vaccine requirement because, under *Davis*, he need only allege that the religious belief *did conflict*. Doc. 27 at 25. According to plaintiffs, requiring Smith to explain how his beliefs conflicted would constitute "a collateral attack" on the validity of those beliefs. *Id.* at 26. Plaintiffs further state that, even if Smith does need to allege how his beliefs conflicted with the vaccine mandate, he has already done so. Doc. 26 at 25.

Plaintiffs cite several cases, including the Eighth Circuit's recent opinion in *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024), and the Sixth Circuit's recent opinion in *Lucky v. Landmark Medical of Michigan*, 103 F.4th 1241 (6th Cir. 2024), to

support the proposition that requiring Smith to plead facts connecting his objection to the COVID-19 vaccine to his religion of Stoicism invites improper judicial inquiry into the sincerity of Smith's religious beliefs. Doc. 50 at 9–10; Doc. 51 at 1–2.

In *Ringhofer*, the plaintiffs alleged that "the vaccination requirements conflicted with their Christian beliefs because: (1) according to Scripture, their 'body is a temple' they must respect and protect, and (2) their anti-abortion beliefs, rooted in religion, prevent using a product 'produced with or tested with fetal cell lines.'" *Ringhofer*, 102 F.4th at 898. The Eighth Circuit reversed the district court's dismissal of the plaintiffs' Title VII claims and held that the plaintiffs had adequately identified the religious views they believed to conflict with taking the COVID-19 vaccine. *Id.* at 901. Two of the plaintiffs in *Ringhofer* also alleged that their company's COVID-19 testing requirement conflicted with their religious beliefs. *Id.* at 902. One plaintiff alleged that testing violated her belief that "her body is a temple," and one plaintiff alleged that testing was "the equivalent of committing idolatry." *Id.* The Eighth Circuit held that these plaintiffs plausibly pleaded that their religious beliefs conflicted with the testing requirement. *Id.* The court concluded that, "[b]y connecting their objection to testing to specific religious principles," the plaintiffs satisfied their burden at the pleading stage. *Id.*

The plaintiff in *Lucky* also pleaded specific facts supporting her contention that vaccination conflicted with an aspect of her religious beliefs. She pleaded that she is a non-denominational Christian who believes she "should not have any vaccination enter her body such that her body would be defiled, because her body is a temple." *Lucky*, 103 F.4th at 1242. She further stated that she "seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer." *Id.* Lucky pleaded that she "prayed to God specifically about the COVID-19 vaccine" and that God told her "that she would suffer spiritual harm if she received the COVID-19 vaccine." *Id.* The Sixth Circuit stated that the district court had no basis "for its insistence

that Lucky explain how 'her religion has a specific tenet or principle that does not permit her to be vaccinated.'" *Id.* at 1243. Lucky's "allegations of particular facts" (that she prayed, she received an answer, and she acted accordingly) were "almost self-evidently enough to establish, at the pleadings stage, that her refusal to receive the vaccine was an 'aspect' of her religious observance or belief." *Id.*

Here, in comparison, Smith did not sufficiently allege a conflict between his religious beliefs and FM Global's vaccine mandate. He stated that receiving the vaccine "would be in conflict with all four core virtues of his religion" but did not state what those core virtues are or how the vaccine conflicts with them. Doc. 1 ¶ 137. Nor did the magistrate judge scrutinize the sincerity of Smith's beliefs. Smith—unlike the plaintiffs in *Ringhofer* and *Lucky*—did not plead to this court facts "connecting [his] objection to [vaccination] to specific religious principles." *Ringhofer*, 102 F.4th at 902.

That Smith must allege *how* his religious beliefs conflicted with an employment requirement is further illustrated by *Arzamendi v. Austin*, a recently decided case from the Northern District of Texas. No. 4:23-cv-0770-P, 2024 WL 1641962, at *3 (N.D. Tex. Apr. 16, 2024). The court in *Arzamendi* found that the plaintiffs failed to state a Title VII failure to accommodate claim because they "[did] not allege *how* masking and testing in and of themselves violated their fundamental religious beliefs—only that they did." *Id.* (emphasis in original). On the other hand, the court concluded that the plaintiffs had met their burden to explain why vaccination would violate their Christian beliefs with "citations to Biblical scripture and personal testimony." *Id.* at *4.

Requiring plaintiffs who bring claims for religious discrimination under Title VII to set forth sufficient facts demonstrating all essential elements of those claims does not impose a higher pleading standard. Instead, it aligns with the well-established rule that plaintiffs, under Federal Rule of Civil Procedure 8(a)(2), must offer more than a "[t]hreadbare recital[] of the elements of a cause

of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (stating that the plaintiff need not submit evidence of a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss, but must plead sufficient facts on all of the ultimate elements to make their claim plausible).

Here, Smith has set out his religious belief: Stoicism and its core virtues. Smith has alleged that the vaccine requirement of his former employer conflicts with his belief. But Smith has not shown the court how the requirement conflicts with his belief outside of a conclusory statement that "the COVID-19 vaccine would be in conflict with" his religion. Doc. 1 ¶ 137. While the court appreciates Smith's explanation that followers of Stoicism, "[i]n order to live in harmony with the Divine Reason, . . . cannot violate the core teachings of the religion," this statement does little to help the court connect FM Global's vaccine requirement to a potential violation of Stoicism's core teachings. Therefore, this court agrees with the magistrate judge's recommendation dismissing Smith's religious discrimination claims without prejudice.

Smith allegedly "outlined his beliefs" for his employer—but, notably, not for this court—with "great detail" about how the COVID-19 vaccine violates the core virtues of Stoicism. Doc. 50 at 8; Doc. 1 ¶ 137. Smith stated that he could incorporate that information in an amended complaint. Doc. 27 at 27 n.3. The magistrate judge recommended granting Smith leave to do so, and the court agrees. Plaintiffs are granted 21 days from the date of this order to file an amended complaint with the required factual pleadings.

## II. Administrative exhaustion of hostile work environment claims

Plaintiffs also object to the magistrate judge's recommendation that each of their hostile work environment claims be dismissed for failure to timely exhaust administrative remedies. Doc.

50 at 11. Plaintiffs' objections focus solely on Whiteside's hostile work environment claim; they argue that Whiteside exhausted his administrative remedies and that this preserves the hostile work environment claim for all plaintiffs because of the single filing rule. *Id*. at 11–12.

In some cases, the single filing rule allows individuals who have not filed administrative charges to join an action brought by those who have. *See Crawford v. U.S. Steel Corp.*, 660 F.2d 663, 665 (5th Cir. 1981). Here, however, the single filing rule is not applicable because each plaintiff filed their own charge. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1223–24 (5th Cir. 1995) (stating that a plaintiff "is bound by the parameters of his own EEOC charge" and "cannot subsequently utilize the single filing rule to avoid the statute of limitations"), *overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *see also Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 599 (5th Cir. 2006) ("[The Fifth] Circuit intended for the single filing rule only to permit a non-charging party to join or intervene in a lawsuit filed by a charging party who has properly exhausted the administrative requirements."). The Fifth Circuit reasoned in *Mooney* that "[t]he employee, by failing to assert a particular allegation in his charge, has necessarily excluded himself from the class of persons purportedly covered by the charge of another." 54 F.3d at 1223–24. Additionally, as explained by the Second Circuit, "allowing an individual who has previously filed a charge to abandon that charge and piggyback onto the charges of another individual would too often frustrate the EEOC's statutorily-mandated efforts to resolve an individual charge through informal conciliation." *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565 (2d Cir. 2006). The magistrate judge therefore did not err in separately analyzing whether each plaintiff had exhausted his or her administrative remedies.

Plaintiffs' objections focus only on Whiteside's hostile work environment claim—no other plaintiff is mentioned. Plaintiffs argue that defendant was on notice it would face a hostile work environment claim based on Whiteside's initial charge of

discrimination, in which he highlighted that he was "subject[ed] to coercive and discriminatory actions by [his] employer." Doc. 50 at 11. However, the report did not recommend dismissal of Whiteside's claim on the grounds that it could not reasonably be expected to grow out of his original EEOC charge. Doc. 49 at 14. The report stated that—even if a hostile work environment claim could reasonably be expected to grow out of this initial charge— Whiteside's claim would be time-barred. *Id.*

To be timely, Whiteside's charge must have been filed within 300 days of any act that was part of the alleged hostile work environment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002). Whiteside has not pointed to any act underlying his hostile work environment claim that occurred after December 31, 2021—300 days before the date of his charge. He alleges that he was terminated on January 4, 2022, but termination cannot constitute a separate incident of a hostile work environment. *See Edwin v. Clean Harbors Env't Servs. Inc.*, No. 22-30263, 2023 WL 4046275, at *3 (5th Cir. June 16, 2023) (citing *Parker v. State of Louisiana Dep't of Educ. Special Sch. Dist.*, 323 F. App'x 321, 327 (5th Cir. 2009)) ("[O]ur court has held that termination is not a separate incident of a hostile work environment."). Therefore, the report did not err in finding that Whiteside had failed to exhaust his administrative remedies because he did not file a timely charge of discrimination with the EEOC.

Having reviewed the objected-to portions of the magistrate judge's report de novo, and being satisfied that it contains no error, the court overrules plaintiffs' objections and accepts the report's findings and recommendation. Defendants' partial motion to dismiss (Doc. 26) is granted. All of plaintiffs' hostile work environment claims are dismissed without prejudice. Smith's disparate treatment, failure to accommodate, retaliation, and disparate impact claims are also dismissed without prejudice. Plaintiffs may file an amended complaint to address Smith's pleading deficiencies within 21 days of entry of this order.

*So ordered by the court on September 26, 2024.*

J. CAMPBELL BARKER
United States District Judge